TILE HOUSE, INC.; American Bluegrass Marble Co.; Mark A. Shader, d/b/a Roman Tile Company; The Trend Appliance Co., Inc.; Kinnaird & Francke; Cardinal Sanitation, Inc.; and Advance Ready–Mix, Appellants,

v.

The CUMBERLAND FEDERAL SAVINGS BANK n/k/a Fifth Third Bank; Charles Steier; Cherry Briet Steier; Mark A. Campisano; Dr. Michael Hannigan; Mrs. Michael Hannigan; Kentucky–Indiana Lumber Co., Inc.; K.F.P., Inc. d/b/a Big River Lumber Company; S.B. Glass Co., Inc.; Gary D. Cox; John Allegeier d/b/a John Allegeier Sodding Contractor; and William K. Sparks, Appellees.

No. 95–SC–0994–DG.

Supreme Court of Kentucky.

March 27, 1997.

As Amended April 25, 1997.

J. Michael Poole, Bruce Garrett Anderson, David B. Blandford, Ackerson, Yann & Miller, PSC, John H. Alvey, B. Keefe Montgomery, Alan N. Linker, Morris, Garlove, Waterman & Johnson, J. Matthew Carey, William Buckaway, Jr., Tilford, Dobbins, Alexander & Buckaway, Louisville, for Appellants.

Timothy W. Martin, Brown, Todd & Heyburn, R. Greg Hovious, Tachau Maddox & Hovious, PLC, Thomas A. Klausing, S. Russell Smith, Jr., Smith & Smith, Michael L. Maple, Susan E. Schneider, Maple & Associates, Dan E. Siebert, Louisville, Charlene Hall Jones, Jeffersontown, Ray H. Stoess, Jr., Stoess Law Office, Gary D. Cox, Joseph E. Fineman, William K. Sparks, Louisville, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the judgment of the trial court in favor of Cumberland Federal Savings Bank and Michael and Michelle Hannigan and refused to give first priority to mechanics' and materialmen's lienholders and awarded the bank and the Hannigans priority superior to the lienholders.

The issue is whether an equitable lien, which is not recorded and of which materialmen have no notice, can take priority over a recorded mechanics' and materialmen's lien.

Cumberland Federal Savings Bank brought a foreclosure action against Charles

Steier, a contractor who was building a residence for Michael and Michelle Hannigan following Steier's bankruptcy. The circuit court, finding that the Hannigans had an equitable lien, gave first priority for the foreclosure sale proceeds to the Hannigans, second priority to Cumberland on the basis of its recorded first mortgage, and third priority to the suppliers and subcontractors who had filed mechanics' liens. Cumberland appealed and several lienholders cross-appealed. The Court of Appeals affirmed and this Court granted discretionary review.

In 1990, the Hannigans paid $3,000 as a down payment to subdivision developer Triad Development for Lot 144 in Wolfe Creek Subdivision. The total lot cost amounted to $43,750. The contract between Triad and the Hannigans was not recorded. Thereafter, the Hannigans entered into an agreement with Charles Steier to build a residence on the lot for a total cost of $252,363, which price was to include the cost of the lot with a $3,000 credit to be deducted from the balance due at closing in consideration of the $3,000 downpayment previously made by the Hannigans to Triad. The Hannigans paid $25,236 as a down payment on the construction contract with Steier. This contract was not recorded either. Steier obtained a construction loan from Cumberland, and he provided the bank with copies of the lot sales contract and the construction contract, thus putting the bank on notice of the payments by the Hannigans of $3,000 and $25,236. Cumberland contacted Equity Title, whose title examination showed the owner of Lot 144 to be Triad. When Equity Title requested a deed from Steier, Triad's attorney informed the Equity representative of the lot sales contract with the Hannigans. At the closing of the construction loan on October 3, 1990, the lot was conveyed to Steier without reference to the Hannigans. The Equity Title lawyer claimed that he was not informed of the interest of the Hannigans and that had he been so advised, he would have subordinated their interest to the Cumberland mortgage. However, such action was not taken.

After construction was begun and various suppliers of labor and material were not paid, a number of mechanics' liens were filed. The record indicates that none of these lienholders had actual or constructive knowledge of the lot sales contract or the construction contract with the Hannigans prior to the recording of their respective liens.

The circuit court issued several orders to the effect that because Cumberland was on actual notice of the Hannigans' lot sales and construction contracts at the time the bank made the loan to Steier, the Hannigans had an equitable lien in the amount of $28,236 which had priority over the bank's first mortgage, which in turn had priority over the mechanics' liens. Last in priority were the Hannigans for the amounts paid to Steier above the $28,236 equitable lien. The Court of Appeals affirmed and reasoned that the Hannigans as a result of the $3,000 payment to Triad had gained equitable title to the real estate and Triad had only legal title in trust for the Hannigans. It also stated that Cumberland had actual notice of the equitable title and that the validity of an instrument between the parties does not depend on its proper recordation. Record title is superior only in regard to the rights of innocent purchasers or creditors pursuant to KRS 382.270. The Court of Appeals distinguished *Akers v. Cushman Construction Co., Inc.*, Ky., 487 S.W.2d 60 (1972), because Cumberland had actual notice of the Hannigan's interest. It further held that the recorded mortgage by the bank gave it priority over the other lienholders. This Court granted discretionary review.

■ The Court of Appeals was in error in granting the Hannigans an equitable lien prior and superior to the mechanics' and materialmen's lienholders. The equitable lien claimed by the Hannigans is inferior to mechanics' and materialmen's lienholders who had no actual or record notice of such a claim. Consequently, the unrecorded position cannot take priority over innocent lienholders without notice. The stipulated facts indicated that the Hannigans did not record any document reflecting their equitable interest in the real property. The record

showed that Steier was the fee simple owner of the real estate during the entire period of construction and title remained in him subject to the claims of other parties to this action.

KRS 376.010(2) provides the priority of statutory lien claims and states that in the absence of actual or constructive knowledge the proper recording of a lien statement constitutes perfection of the lien and establishes its priority over subsequently recorded liens or claims. Here the record indicates that without question all the mechanics' lien claimants filed statements of lien in the office of the county clerk at a time before any actual notice or constructive knowledge of the assertion of an equitable lien by the Hannigans.

*Akers v. Cushman Construction Co., Inc., supra,* held that an equitable lien by the contract purchasers was subordinate and inferior to the liens of the bank and the mechanics' and materialmen's lienholders to the extent that those liens were properly perfected pursuant to Chapter 376. *Akers* determined that the failure of the contract purchasers to protect any equitable interest in the real property by recording their contracts as permitted by KRS 382.100 was conclusive to their position of priority. Here, the Hannigans could have easily protected their equitable interest by recording their contract with Steier or by obtaining a mortgage that was subordinate to the construction loan at the time the construction contract was entered into. Their failure to so record does not allow them to assert an equitable claim superior to that of the mechanics' lienholders.

However, as between the Hannigans and the Cumberland Bank, it is undisputed that Cumberland, through its closing officer, had actual notice that the Hannigans were purchasers of a lot and had paid $3,000 as a down payment and that they had paid another $25,236 on the construction contract. Consequently, the bank was on actual notice of the equitable lien of the Hannigans; however, the mechanics' lienholders were clearly not on any notice. The Hannigans, as the contract purchasers of the property, were in the best position to protect their equitable interest against claimants by simply recording the instruments which reflect their agreement to purchase the property subsequent to the completion of construction by Steier. The bank, although on notice of the equitable interest of the Hannigans, did not take any steps to subordinate that interest to their mortgage. Any equitable lien of the Hannigans, although it may be superior to the claim of the bank, is inferior to the statutory liens properly perfected by the mechanics' lienholders pursuant to KRS Chapter 376.

The Court of Appeals failed to adequately consider *Akers, supra,* and its proper application to this situation. Here, it had been stipulated that the Hannigans did not record any document indicating their equitable interest in the real estate and the mechanics' lienholders had no notice of such an interest prior to completing their work and filing their liens. *Akers* stated that there is no evidence indicating the claimants ever had notice of the existence of the contract or the equitable lien at any time before the performance and delivery of the materials. The fact that Cumberland apparently had notice is not such a factual difference which would prevent the priority of the mechanics' lienholders as to any interest claimed by the Hannigans. The knowledge of the bank cannot be imputed to the lienholders in any way so as to affect the priority of their claims.

*Akers* also ruled that as between innocent parties "he must suffer, who by his acts or laches, has made a loss possible." *Akers* also cited *Louisville Asphalt Company v. Cobb,* 310 Ky. 126, 220 S.W.2d 110 (1949), which stated that " . . . equity aids one who has been vigilant and will refuse relief to one who has been dilatory . . . or who has slept on his rights."

Here, the liens of the mechanics and materialmen are superior and prior to that of the bank because the Hannigans' equitable lien has priority over the bank's mortgage and

the mechanics' and materialmen's liens have priority over the Hannigans' equitable mortgage. The mechanics and materialmen stand in the shoes of the Hannigans to the extent of the equitable lien, but remain behind the bank in priority to the extent that their claims exceed the value of the equitable lien. The bank had notice of the sales contract for the real estate and the down payment. The agent of the bank had notice of the prior interest at the time of the closing of the construction loan on October 3, 1990. The Cumberland Bank is clearly prevented from claiming a lien prior and superior to that of the mechanics' lienholders who supplied the labor and materials without any notice of the contract which the bank had notice of notwithstanding the fact that the bank had recorded their mortgage prior to the lien claims. The failure of the bank to subordinate any interest of the Hannigans to their mortgage caused part of the loss incurred.

Finally, although the Court of Appeals did not address the question of which order of the circuit court was final and appealable, we hold that the circuit court order of January 20, 1993 was not final and appealable and simply an interlocutory order. In the record, there are seven orders. Beginning with the Master Commissioner's report of February 27, 1992, followed by the circuit court order of June 26, 1992 rejecting the Commissioner's recommended priority; the circuit court order amending the June 26 order, which was entered December 29, 1992 in regard to the self-help in removing plumbing and lighting fixtures, etc., from the home; the order which was not appealable, January 20, 1993; the April 28, 1993 judgment and order of sale; the May 28, 1993 order which amends the previous judgment; and the last order entered June 9, 1993, which amends the second amended judgment as to interest rates and the priority of payment proceeds. We agree with the lienholders that CR 54.02 provides support for the finding that the actual final order entered June 9, 1993, which established priority of payment of the proceeds of the foreclosure sale was part of the primary controversy between the parties.

This Court has authority to determine that the January 20, 1993 order is not final and appealable. *See Hook v. Hook,* Ky., 563 S.W.2d 716 (1978). Our examination of the record indicates that the priorities determined by the Master Commissioner in his report of February 27, 1992 were correct. Those priorities are as follows:

(1) $28,236, which represents the Hannigans' equitable lien, be divided pro rata among the lienholders due to the Hannigans' failure to record their interest in the property.

(2) The bank, for amounts due under the mortgage.

(3) The lienholders, pursuant to their recorded liens.

(4) The Hannigans.

It is the holding of this Court that the Court of Appeals erred in granting the Hannigans an equitable lien prior to the mechanics' and materialmen's lienholders. The liens of the mechanics and materialmen are prior to that of the bank despite KRS 376.010 and the circuit court erred in holding the January 20, 1993 order was final and appealable. The proper final order was that of June 9, 1993.

The decision of the Court of Appeals is reversed. This matter is remanded to the Jefferson Circuit Court with instructions that a judgment be entered directing the distribution of the proceeds of the foreclosure sale be made pursuant to the priorities as determined by the Master Commissioner in his report of February 27, 1992.

All concur.