## Louisville Asphalt Co. v. Cobb et al.

April 29, 1949.

Wm. F. Clarke for appellant.

Lawrence S. Grauman and Raymond L. Sales for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

In a suit by Irvin Cobb to foreclose a mortgage on property owned by Walter L. Owen, the Louisville Asphalt Company claimed superior liens by virtue of two street improvement warrants and a lis pendens notice. The chancellor ruled that it would be inequitable to adjudge the liens, and the asphalt company appeals.

On October 17, 1927, the appellant received apportionment warrants for the construction of a street, which constituted a lien on two certain lots. It seems they now make up one lot. One warrant was for $256.95 against lot No. 14, standing in the name of Mary Wollenschlager. The other was for $83.04 on lot No. 13 owned by George W. Grant. On September 26, 1932, the company filed suit to enforce these and other liens and filed a lis pendens notice in the county court clerk's office. Process was served on Grant. The summons was returned not found as to Mrs. Wollenschlager. So far as the suit related to these lots, it slept undisturbed in that status until awakened by the present litigation which was instituted November 26, 1947.

It was developed in this suit that Mrs. Wollenschlager had been dead since May, 1906, more than twenty-six years, when the company filed its suit against her. She had been a resident of Cincinnati and died testate, but her will had never been probated in Jefferson County, Kentucky, and title remained of record in the name of the deceased owner. Someone regularly paid the city taxes until 1928. The city purchased the delinquent tax bill that year and received a deed from the tax receiver

on November 5, 1930, which it duly recorded. Thus, the legal title stood in the name of the city when the company's suit was filed.

It was also developed that Grant had died in July, 1937, leaving heirs residing in Jefferson County. This lot was sold to the city for nonpayment of 1931 taxes, and it received a tax deed November 2, 1933. Thus, when the suit was filed, legal title stood of record in the name of the defendant, Grant, but the city had the equitable title subject to redemption.

The asphalt company had no actual knowledge of the respective deaths or delinquent tax proceedings or of the tax deeds to the city until the present litigation disclosed those facts. The city was a party to its suit filed in 1932, but only for the purpose of collecting the warrants contingent upon failure to enforce the liens against the property.

On August 29, 1946, the city conveyed both lots to Johnny Guy, and on October 20, 1947, he conveyed them to Walter L. Owen. He mortgaged the lots to Cobb on October 25, 1947, to secure a note for $2,500 maturing in one month. The next day after the note became due Cobb filed the suit to foreclose the mortgage and brought in the asphalt company to assert any claim it might have, the existence of which, however, Owen denied.

The appellant's argument runs like this: The filing of the suit in 1932 to enforce the statutory liens tolled limitations, and the recorded lis pendens notice notified all the world of the existence of the claim to the liens and the pendency of the suit to enforce them; the City of Louisville was a party for all purposes, and the present owner and mortgagee derived title from the city and took it subject to the liens. It is further submitted that as the proceeding was in rem a mistake in naming the deceased, Mrs. Wollenschlager, as the owner of one of the lots did not affect the lien; that it was kept alive so long as the suit remained undisposed of and there is no limitation as to the time a case may remain pending on the docket. The rule of laches is not applicable, it is argued, since the present parties were not prejudiced, the lien being of record from the beginning. The appellees join issue. We resist the temptation

to chase these alluring rabbits and keep our eye on the squirrel. Unreasonable delay is its name.

We have inherited the maxim from ancient days that equity aids one who has been vigilant and will refuse relief to one who has been dilatory or wanting in diligence in prosecuting his cause of action, or who has slept on his rights. It finds application in the doctrine of estoppel and is given effect in innumerable fact settings. Along with this is the maxim that he who seeks equity must do equity. Under that principle, where the question for determination is whether one party or another has the prior or superior right, the decision should be against the party who has the weaker equity or the one who was in better position by reasonable diligence or care to have averted the loss which now must be borne by the one or the other. 19 Am.Jur., Equity, secs. 480-482; Jefferson County v. McGrath's Ex'r, 205 Ky. 484, 266 S.W. 29, 41 A.L.R. 586; Williams Coal & Coke Co. v. Spears, 277 Ky. 57, 125 S. W. 2d 745.

At common law the mere pendency of a suit asserting a lien was regarded as notice to all the world, and a purchaser pendente lite took the property subject to any judgment which might be rendered in the action. But that rule of constructive notice was abrogated by statute (originally enacted in 1896, c. 11) unless a statement describing the action in certain particulars and its objective shall be filed in the office of the county court clerk. KRS 382.440. Where the statute has been complied with (as it was here), the lis pendens rule is put in operation. Donacher v. Tafferty, 147 Ky. 337, 144 S. W. 13; Watts v. Noble, 203 Ky. 644, 262 S.W. 1114. The essential doctrine of lis pendens is not changed. Roberts v. Cardwell, 154 Ky. 483, 157 S.W. 711, Ann.Cas. 1915C, 515. But the plaintiff's right to proceed with the action and have his lien enforced irrespective of intervening conveyances or encumbrances does not last forever. So far as third persons are concerned the duration of the lien and operation of lis pendens rights depend upon diligent prosecution of the suit and the claims. The right may be lost by negligence or unreasonable delay in prosecution to such a degree that intervening rights become paramount on the presumption of permanent abatement or abandonment. This principle has been established, as said in Erhman v. Kendrick, 58 Ky. 146,

1 Metc. 146, "to guard in some degree against the mischiefs that might arise through the rights of third persons, from permitting a lien on property, latent in its character, to be continued beyond a period of time actually necessary for its enforcement." And as expressed in Kelley v. Culver's Adm'r, 116 Ky. 241, 75 S.W. 272, 274, 25 Ky.Law Rep. 443, "It would be an anomalous rule, indeed, that would require diligence of the innocent stranger, while condoning the most culpable negligence of the controlling party to the suit." The principle is deeply imbedded in our jurisprudence. Watson v. Wilson, 32 Ky. 406, 2 Dana 406, 26 Am.Dec. 459; Clarkson v. Morgan's Devisees, 45 Ky. 441, 6 B. Mon. 441; Gossom v. Donaldson, 57 Ky. 230, 18 B.Mon. 230, 68 Am.Dec. 723; Hawes v. Orr, 73 Ky. 431, 10 Bush 431; Wallace v. Marquett, 88 Ky. 130, 10 S.W. 374; City of Louisville v. Burke, 87 S.W. 269, 27 Ky.Law Rep. 896; Woodward v. Johnson, 122 Ky. 160, 90 S.W. 1076, 28 Ky.Law Rep. 1091; Seibert v. City of Louisville, 125 Ky. 292, 101 S.W. 325, 30 Ky.Law Rep. 1317; Roberts v. Cardwell, supra; Whittaker v. Chenault, 192 Ky. 81, 232 S.W. 391.

In the instant case we have lis pendens notice of a claim of liens filed more than fifteen years before any step was taken to have the claim adjudicated. The name of one of the defendants was that of a person who had been dead more than forty years, and the owners of the property had never been made parties to the suit. See City of Louisville v. Hexagon Tile Walk Co., 103 Ky. 552, 45 S. W. 667. The other defendant had been dead more than ten years, and the right to revive the suit had been lost nine years before this suit was filed, in which, by intervention, the superiority of the street improvement liens was asserted. Secs. 507, 508, Civil Code of Practice. No action whatever was taken during this long period to have the case placed on the trial docket in accordance with the rules of the court.

It was held in Ehrman v. Kendrick, supra, 58 Ky. 146, 1 Metc. 146, in which a mechanics' lien was continued in force by lis pendens, that failure of the plaintiff without good reason to obtain a decree for the enforcement of the lien for four years after the suit therefor was ready for trial was such gross negligence as to deprive

him of his right to enforce it against subsequent mortgagees. In City of Louisville v. Burke, supra, 87 S. W. 269, 27 Ky.Law Rep. 896, no action was taken for more than fifteen years to prosecute a suit to enforce tax liens which had been extended beyond the five-year statutory limitation period by reason of lis pendens notice. In the meantime, eight years after the suit was filed, a bank had become a mortgagee and two years later the purchaser of the property without actual notice of the pendency of the suit or the claim for taxes. It was held the bank's equities were superior to the tax liens where the suit to enforce it had been subsequently resurrected. In Whittaker v. Chenault, supra, 192 Ky. 81, 232 S.W. 391, it was held that the filing of lis pendens notice of an execution lien constituted proof only that such lien was being asserted, and that after the expiration of eleven years without any action being taken to enforce the lien, it would be conclusively presumed that the lis pendens had been abandoned or concluded.

We are of opinion that the failure of the asphalt company to prosecute its suit filed in 1932 to enforce the apportionment warrant liens raised the presumption of abandonment and had the effect of dissolving the lis pendens notice, so that the plaintiff's rights under it as against bona fide purchasers for value were lost. This being the conclusion of the chancellor, the judgment is affirmed.